## FARACE v. UNITED CREAMERY, Inc.
### No. 1441.

Court of Appeal of Louisiana.
First Circuit.

March 4, 1935.

H. M. Wilkinson and A. Miles Coe, both of New Orleans, for appellant.

Ponder & Ponder, of Amite, for appellee.

ELLIOTT, Judge.

John Farace claims of United Creamery, Inc., damages to the extent of $938.35, with interest, as the result of a collision between their respective trucks at the intersection of Bay street with Chestnut street in the town of Amite City.

The principal item claimed is on account of damages to plaintiff's truck; other items are for hire of another truck, due to the loss of the use of the one injured, physical injuries suffered by plaintiff, and the loss of fruit, vegetables, produce, etc., with which his truck was loaded.

The plaintiff alleges that the collision was due to the fault and negligence of the driver of defendant's truck.

The defendant denies the fault and acts of negligence alleged against it, and alleges in turn that the collision resulted from fault and neglect of the driver of plaintiff's truck and of the plaintiff himself, who was occupying his truck at the time. It is alleged alternatively, if it be found that defendant was negligent and at fault, that then, in that event, plaintiff's demand should be refused and rejected because of his contributory fault and negligence in bringing about the collision.

There was judgment in favor of the plaintiff for $450, with interest.

Defendant has appealed.

Plaintiff's truck, which we will refer to as the fruit truck, was being driven at the time of the collision by Carl Mashon. It was loaded with apples, bananas, tomatoes, potatoes, and other produce, with plaintiff seated on the front seat by the side of his driver, and going south on Bay street in the town of Amite City. The exact time when the collision took place cannot be definitely stated, but the evidence indicates that it was between 7 and 8 o'clock a. m., broad daylight, with nothing to prevent either party seeing up and down the street at the time in question.

We will speak of defendant's truck as the milk truck. It was being driven by Claud Landry, loaded with empty milk cans and coming from New Orleans on its way to Tylertown, Miss., to get a load of milk. When it came to Chestnut street in the town of Amite City, which street is part of the Amite-Franklinton highway, it turned east on the highway. This highway is paved to the width of 18 feet through the corporate limits of the town of Amite City. The pavement is in the middle of the street. The width of this street from property line to property line does not appear from the evidence, except it may be reasonably inferred from statements of witnesses that it is a wide street with a wide intervening space on each side of the pavement, between the pavement and the property line on the north and south side of the street. The conflict between the testimony of Landry, driver of defendant's truck, on one side, and Mashon, driver of plaintiff's truck, and of Farace himself and of Mrs. Scarle, a lady living close to the scene of the accident, is so pronounced that their respective positions must be stated in order to be appreciated.

According to Farace and Mashon, the fruit truck was going south on Bay street at 10 or 15 miles an hour. As they reached the Chestnut street intersection, looking up and down Chestnut they saw the milk truck coming from the west on the north side of the pavement at a speed which they estimated to be 50 or 55 miles an hour. The north side of the pavement was the wrong side for it to be on, going east. They say that, when they reached the north side of the pavement on

Chestnut street and saw the approaching truck so near at hand, coming on the wrong side of the pavement, at the speed estimated, they applied brakes to their truck and stopped it near the edge of the pavement and on the north side of the same; that the front end of their truck, when stopped, was probably 10 or 12 inches on the pavement; that they were stopped in this position when struck; that the front end of defendant's truck missed them as it passed, but its left rear end, swinging in closer as it passed, contacted with the bumper on the front end and right-hand side of their truck, with the result that it caught hold of their bumper and jerked their truck under its brakes, across the street in an angling position, resulting in the damage of which the plaintiff complains.

Claud Landry was the only occupant of the milk truck. He testifies that he entered Chestnut street going east on the highway in question and approached the intersection of Bay street, driving at a speed of 15 or 20 miles an hour on the right-hand side of the pavement, the right-hand side going east would have been the south side pavement; that he saw the fruit truck on his left coming to the Bay street intersection ahead distant from him 50 or 60 feet; that he thought the truck would stop, but it did not, and attempted to come across the road; that he (Landry) was too close to the intersection to turn or stop, and the fruit truck struck his left rear wheel and brought about the collision and damages which the parties sustained.

We quote a part of Landry's testimony on the subject:

"Q. You state that you were driving along from 15 to 20 miles an hour at the time of the collision? A. No, Sir.

"Q. How fast were you driving? A. I said I had picked up a little to try to avoid the smash-up.

"Q. How fast were you going? A. I guess 25 or 30 miles. I realized the man wasn't going to stop so I tried to beat him across; tried to avoid the wreck.

"Q. When did you see this truck of Mr. Farace? A. When I was approaching the cross street; I guess 50 or 60 feet from the crossing.

"Q. 50 or 60 feet up Chestnut street? A. Up Chestnut street. His truck was up Bay Street. * * *

"Q. Where were you? A. I was approximately within about 50 or 60 feet from Bay Street.

"Q. If you had seen this truck 50 or 60 feet from Bay Street and you going along whatever rate per hour, either 15 or 20 or 30 miles, you should have stopped before you got to the intersection. A. I thought I had the right of way. I expected him to stop for the right of way street.

"Q. Do you know, as a matter of fact, that this accident happened on the left-hand side of the paved street going east, on the north side of the pavement? A. No, Sir."

We have Landry stating that the fruit truck did not stop, but continued across the pavement and struck the milk truck as the milk truck passed on the south side of the street. Mrs. Scarle was coming out of her house and looking at the two trucks as they approached each other close at hand and saw that a collision between them was inevitable. She testifies that she shut her eyes at the instant of the impact, but the noise caused her to open them quickly, and, when she did, the milk truck was turning over rapidly with its wheels in the air; that plaintiff's truck had been jerked across the street in a position pointing in another direction.

Mrs. Scarle was the only eyewitness to the accident except plaintiff and Mashon, his driver, and Landry, defendant's driver. The lady gave her testimony in a disinterested way. She says she shut her eyes at the moment of the impact, but, according to what she says, she opened them so quick that for practical purposes she may be called an eyewitness. We can see no reason for any influence on either side which would cause any bias on her mind, for or against either side. She was so near at hand she could not help but see the two trucks in front of her and what was going to take place, and the almost instantaneous result. She testifies that the milk truck was being driven on the north side of the pavement when she first saw it, and that it continued on that side until the impact took place. She testified, as did Farace and Mashon, that the fruit truck had stopped on the extreme north side of the pavement, and that the impact took place on the extreme north side of the pavement, at the place where the fruit truck had been stopped. We take this fact to be established, and, such being the case, no collision could have occurred, no matter how fast the milk truck was being driven, if it had kept to the side of the pavement on which it belonged. The northern edge of the pavement was not the north side of the street, but it was a place where any vehicle coming south on Bay street could safely stop and

await the passing of another vehicle on Chestnut street.

The town ordinance on the subject of speed provides that: "It is unlawful to run, drive or operate an automobile or other vehicle within the corporate limits of the town of Amite City at a greater rate of speed than fifteen miles per hour." As the fruit truck was seen at a distance of 50 or 60 feet away, if the milk truck had been going 15 miles an hour, as it should have been, it could have been stopped after the fruit truck had been seen, before the place where it was had been reached. As the fruit truck had stopped on the northern edge of the pavement, there was no occasion for the milk truck to stop, if it had kept to the south side of the pavement on which it belonged, going east.

Defendant's contention that his truck had the right of way and that his driver expected the fruit truck to stop and recognize the superior right of the milk truck, that the fruit truck did not stop, but continued across and struck the milk truck, is entirely overcome by the testimony of Farace, Mashon, and Mrs. Scarle. The physical markings made by the wheels of the fruit truck from the place where it had stopped under brakes to the place where it was jerked as a result of having been hooked by the passing wheel of the milk truck going at great speed also supports the contentions of the plaintiff.

There is no need for a further discussion of the case. The entire fault and negligence for bringing about the collision rests on the defendant.

The plaintiff has answered the appeal, and prays that the judgment appealed from be increased from $450, with interest to $938.-35, with interest.

On this subject we are guided by the testimony of Mr. Hood. He estimates that repairs on plaintiff's truck would cost about $378.35. Mr. Hood is a dealer in trucks of the kind in question, and we feel that we can be guided by his estimate on the subject.

The plaintiff testifies that, as a result of the collision, he lost produce to the extent of $75. There is no evidence to the contrary, and this loss seems established.

The plaintiff claims that he hired another truck at the price of $10 a day for ten days to take the place of the one injured. He did not name the party from whom he had hired the truck; consequently the defendant could not make inquiry of this party; besides, we think plaintiff's entire damage sufficiently rec-ompensed by the amount allowed in the lower court.

Judgment affirmed; defendant and appellant to pay the cost in both courts.

MOUTON, J., not participating.